Law Office of
MICHAEL J. BLOOM, PC
100 North Stone Avenue, Ste. 701
Tucson, Arizona 85701
MICHAEL J. BLOOM (AZ Bar No. 004897)
Email: *mike@michaeljbloom.net*
Telephone: (520) 882-9904
Fax: (520) 628-7861

Law Office of
HERNANDEZ & HAMILTON, PC
The Johnson House Offices
455 West Paseo Redondo
Tucson, Arizona 85701-8254
JOSHUA F. HAMILTON (AZ Bar No. 028084)
Email: *Josh@Hernandez-Hamilton.com*
Telephone: (520) 882-8823
Fax: (520) 882-8414

Attorneys for Defendant Dougall

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR18-2526-TUC-JAS(JR) |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT'S OBJECTIONS TO DRAFT PRESENTENCE INVESTIGATION REPORT** |
| Nathanael Dougall, | |
| Defendant. | |

The defendant, through his attorneys, hereby objects to the following factual statements, conclusions, and recommendations as contained in the draft presentence investigation report (hereinafter, "draft PSR") prepared in this case. The specific grounds for Mr. Dougall's objections to the draft PSR are as set forth below:

# **DEFENDANT'S OBJECTIONS TO THE DRAFT PSR**

1. <u>Page 5, Paragraph 20</u>:

The draft PSR states that Mr. Dougall is subject to a two-level enhancement under USSG §2G2.2(b)(6) on the basis that the offense involved the use of a computer.

Virtually *all* child pornography cases now involve the use of a computer and, therefore, this cannot be said to be a "specific offense characteristic," as it is intrinsic in all such cases. Thus, the reliance on the use of a computer to enhance a defendant's total offense level is irrational because, logically and factually, the use of a computer is simply not a genuine aggravating factor in child pornography offenses; rather, it is simply an aspect inherent in all cases. *See United States v. Dorvee*, 616 F.3d 174, 186 (2d Cir. 2010).

Congress originally crafted the "use of a computer" enhancement as part of the Sex Crimes Against Children Prevention Act (SCACPA) more than 25 years ago when the internet and personal computers were still in their infancy. The enhancement was ostensibly designed with four clear goals in mind: (1) to fight the widespread dissemination and instantaneous transmission in computer assisted trafficking of child pornography, (2) to combat the increased difficulty of investigation and prosecution by law enforcement, (3) to minimize the increased likelihood that child pornography will be viewed by and harm children, and (4) to

limit the potential for pedophiles to lure children into sexual relationships through the use of a computer.  Leg. Hist. SCACPA, found at H.R. Rep. No. 90, 104th Congr., 1st Sess. 3-4 (1995) *as reprinted in* 1996 U.S.C.C.A.N. 759.  While those goals may have made sense in 1995, they no longer apply the same way in the modern context some quarter century later.  Like the now-defunct 100-to-1 crack-to-powder cocaine guideline, the passage of time has proven illusory the original intent justifying the guideline at inception:

> [T]he enhancement for use of a computer does not make much sense because online pornography comes from the same pool of images found in specialty magazines or adult bookstores.  Further, to the extent that use of a computer may aggravate an offense, it does so in every case.  For example, someone who emails images to another . . . is not as culpable as someone who sets up a website to distribute child pornography to a large number of subscribers.  If the defendant did not use the computer to widely disseminate the images, use them to entice a child, or show them to a child, the purpose for the enhancement is not served.  Yet it applies in virtually all cases.

*United States v. Hanson*, 561 F.Supp.2d 1004, 1009-10 (E.D.Wisc. 2008).

Gone are the days where child pornography is traded through the mail or in adult bookstores.  Now, essentially 100 percent of child pornography cases involve the use of a computer.  *Dorvee*, 616 F.3d at 186 (examining Sentencing Commission's statistical data from 2010 to determine that 97.2% of all child pornography cases involved use of computer; that figure is likely even higher

3

today).  Forensic computer technology and monitoring *facilitates* rather than hinders law enforcement investigation and prosecution.  There is no empirical data to suggest that computerized child pornography had increased dissemination to children or luring of children by sexual predators.  The factors enumerated by Congress in setting forth the "use of a computer" enhancement do not apply to this case and, moreover, given that the use of a computer is universally present in all child pornography cases, it cannot be said that Mr. Dougall was threatening the harm that the enhancement was designed to address any more than every other similarly situated defendant.

Finally, because the charge to which Mr. Dougall pled guilty—distributing child pornography via the internet—necessarily involves the use of a computer, the application of an additional two-level enhancement for the "use of a computer" during the commission of said offense would result in impermissible double-counting under the guidelines.  *Cf. United States v. Snider*, 976 F.2d 1249, 1252 (9th Cir. 1992).

2.   Page 6, Paragraph 22:

The draft PSR states that Mr. Dougall is subject to a 2-level adjustment under USSG §3A1.1(b)(1) because he "knew or should have known" that some of the victims depicted in the child pornography were vulnerable, as some images depicted infants and toddlers being sexually assaulted.

There is no doubt that the child pornography that Mr. Dougall is guilty of distributing was vile, nor is there any doubt that infants and toddlers are particularly vulnerable. But, imposing the vulnerable victim enhancement in this context is nevertheless improper because Mr. Dougall's total offense level is already enhanced by virtue of USSG §2G2.2(b)(4).

Section 3A1.1 provides for a two-level increase if the victim is "unusually vulnerable due to age" but specifically states that "no increase is warranted if "the offense guidelines specifically incorporates this factor." *See* USSG §3A1.1, cmt. n.2. Section 2G2.2, the guideline for child sexual exploitation offenses, inherently incorporates the factor of age into the base offense levels proscribed in subsection (A). In addition, §2G2.2 provides for several additional offense level increases based upon the ages of the victims, both of which have been assessed in the draft PSR upon Mr. Dougall.[1] To increase the offense level yet again—by two more levels—due to the ages of the victims would be to "double count" and is, therefore, impermissible. *United States v. Plaza-Garcia*, 914 F.2d 345 (1st Cir. 1990) (then-Chief Judge Stephen Breyer holding 2-level adjustment for vulnerable victim did not apply when sentencing defendant for sexually exploiting minor

---

[1] In addition, §2G2.2 provides for a 2-level enhancement if the material involved a prepubescent minor, and an additional 4-level enhancement if the material involved sadistic or masochistic conduct and/or depicted infants or toddlers, *i.e.*, the same images which would form the basis of the enhancement under § 3A1.1(b)(1). The draft PSR imposed two specific enhancements upon Mr. Dougall accounting for the young age of the victims. (Draft PSR, ¶¶ 18-19).

because the guideline for sexual exploitation specifically incorporated factor of age); *United States v. Dowell*, 771 F.3d 162, 174-75 (9th Cir. 2004).

Section 2G2.2(b)(4) now has two separate subsections, only one of which can be applied at a time. *See* §G2.2(b)(4) (if offense involved material that portrays (A) sadistic or masochistic conduct *or* (B) sexual abuse or exploitation of infant or toddler, increase by 4 levels) (emphasis added). Subsection (A) is the "sadistic and masochistic conduct" enhancement that applies if the offense involves material that portrays "sadistic or masochistic conduct or other depictions of violence," and subsection (B) is the "infant and toddler" enhancement that applies if the offense involved material depicting the "sexual abuse or exploitation of an infant or toddler." USSG §2G2.2(b)(4). Either subsection would lead to the same 4-level increase, and because a defendant subject to the "infant and toddler" enhancement cannot also be subjected to the 2-level "vulnerable victim" adjustment, §3A1.1(b), which applies if the defendant knew or should have known that the victim of their offense was a "vulnerable victim," the 2-level adjustment cannot apply here in this context. *See* §2G2.2(b)(4)(B), app. n.4 ("If subsection (b)(4)(B) applies, do not apply §3A1.1(b).").[2]

---

[2]This commentary note and the "infant and toddler" enhancement were added to the Guidelines in 2016 after the Sentencing Commission explained that expanding the "sadistic or masochistic" enhancement to include infant and toddler victims would "promote more consistent application of the child pornography guideline and reduce unwarranted sentencing disparities" because "application of

In this case, the draft PSR recommends applying the "sadistic and masochistic conduct" enhancement based on images depicting infants and minors which also depict those same infants and toddlers in bondage. (*See* Draft PSR, ¶¶ 11, 19.) When two offense level enhancements are listed in the "alternative" (*i.e.*, within the same specific subsection) a sentencing court may only use the enhancement that "best describes the conduct" at issue. USSG §1B1.1 cmt. n. 4(A), *see also Stinson v. United States*, 508 U.S. 36, 38 (1993) (holding that Guidelines commentary "that interprets or explains a guideline is authoritative, unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline); *United States v. Nichols*, 943 F.3d 773, 775 (6th Cir. 2019).

Therefore, in cases where, as here, a defendant has images that trigger **both** the "sadistic and masochistic conduct" enhancement and the "infants and toddler" enhancement, a proper application of the guidelines would mean that the defendant would only receive the 4-level increase under 2G2.2(b)(4) that best describes the conduct. Because the draft PSR notes specifically that Mr. Dougall possessed a series of images depicting infants and toddlers in bondage, it triggered the "infants

---

the vulnerable victim adjustment necessarily relies on a fact-specific inquiry." USSG app. C, amend. 801 (2016) (Reason for Amendment). By reducing the number of cases in which the "vulnerable victim" enhancement could apply— because the new "infant and toddler" enhancement would apply instead—the Commission intended to limit the number of "fact-specific" inquiries by sentencing courts, thereby facilitating more consistent calculation of the guideline.

and toddlers" provision of §2G2.2(b)(4)(B) which precludes application of the provision of §2G2.2(b)(4)(B).  By necessary implication, then, he cannot be subject to the 2-level upwards adjustment under USSG §3A1.1(b) instead.  *Cf. Nichols*, 943 F.3d at 779-82 (Clay., C.J, dissenting).

      RESPECTFULLY SUBMITTED this 20th day of May, 2020.

      Law Office of
      HERNANDEZ & HAMILTON, PC


      *s/Joshua F. Hamilton*
      JOSHUA F. HAMILTON
      Attorney for Defendant Dougall


      Law Office of
      MICHAEL J. BLOOM, PC


      *s/Michael J. Bloom*
      MICHAEL J. BLOOM
      Attorney for Defendant Dougall

# **CERTIFICATE OF SERVICE**

I, Joshua F. Hamilton, hereby certify that on this 20th day of May, 2020, I electronically transmitted the foregoing documents to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Electronic Filing was sent to the following recipients:

The Honorable James A. Soto
United States District Court

The Honorable Jacqueline Rateau
United States District Court

Nathaniel Walters, Assistant
United States Attorney's Office

Carin Duryee, Assistant
United States Attorney's Office

Michael J. Bloom
Attorney for Defendant Dougall

Joshua F. Hamilton
Attorney for Defendant Dougall

By *s/Joshua F. Hamilton*
    JOSHUA F. HAMILTON